Dear Mr. Mangham:
You have requested the opinion of this office regarding a special ad valorem tax election proposed to be held in Caddo Parish on April 3, 1993. It is our understanding that the Caddo Parish Commission would like to utilize the tax revenues generated by the proposed tax for the purpose of maintaining, equipping and operating a medical research facility (the "Facility"). The Facility is being constructed by The Biomedical Research Foundation of Northwest Louisiana (the "Foundation") on the campus of the Louisiana State University Medical Center in Shreveport.
Ms. Susie Morgan, counsel to the Foundation, has provided us with a copy of the proposed proposition, which provides as follows:
 "Shall Caddo Parish, Louisiana (the "Parish") levy a special tax of ( ) mills on all property subject to taxation in the Parish, for a period of five (5) years beginning with the year 1993 and ending with the year 1997, for the purpose of promoting economic development through the Biomedical Research Foundation of Northwest Louisiana, such economic development to include appropriate scientific and educational programs and assistance, with the proceeds of said tax to be used for any lawful purpose for which the Parish may expend public funds and which is intended to encourage and assist in the location, development or expansion of industrial, manufacturing, commercial or professional businesses or concerns?"
It is our understanding that the Foundation is a non-profit corporation which has been granted tax-exempt status pursuant to Sec. 501(c)(3) of the Internal Revenue Code. According to the Articles of Incorporation of the Foundation, the purpose(s) of the Foundation include the following:
 "To engage in scientific, educational, literary and charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code and in this connection to promote, encourage, carry on and aid in the conduct of scientific investigations, research, experiments, studies, education, training and allied supportive activities relating to the field of biomedical science, which shall be directed toward assisting northwest Louisiana in attracting new industry or in retaining or developing existing industries."
It is our understanding that the Caddo Parish Commission is concerned about two issues:
1. Is the governing authority of Caddo Parish authorized to call an election and levy an ad valorem tax for the purposes set forth in the proposition, including the administration of the funds by the Foundation?
2. Can the tax revenues be utilized for the purpose of maintaining, equipping and operating the Facility?
These issues must be examined in light of La. Const. (1974) Art.VII, Sec. 14, which prohibits, subject to certain exceptions, the state and its political subdivisions from loaning, pledging or donating their funds, credit, property, or things of value to or for any person, association or corporation, public or private.
Also pertinent are the constitutional and statutory provisions regarding utilization of tax revenues in accordance with the will of the electorate. Revenues generated from tax propositions can only be utilized in accordance with the authorization of the electorate. La. Const. (1974) Art. VI, Sec. 26(B); R.S. 39:704.
The proposed proposition, if approved by the voters, would require that all revenues generated by the tax be: (a) administered through the Foundation, (b) utilized only for purposes for which the Parish can lawfully expend public funds, and (c) utilized only for economic development intended to encourage and assist in the location, development or expansion of industrial, manufacturing, commercial or professional businesses or concerns.
Regarding the first issue presented by your request, it is the opinion of this office that the governing authority of Caddo Parish is authorized to call an election and levy an ad valorem tax for the purposes set forth in the proposition, and that the revenues generated by the tax must be administered by the Foundation, in accordance with the proposition, for the economic development purposes authorized and referred to in the proposition.
The decision of the Louisiana Supreme Court rendered in Guste v. Nicholls College Foundation, 564 So.2d 682 (La. 1990) is also pertinent. In Guste, the Supreme Court held that a transfer of funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be given and accepted "under authority of the constitution and laws of this state", and therefore not in violation of Art. VII, Sec. 14, as the funds were "transferred in the discharge of the Federation's constitutional or legal duties" and were accepted by the Foundation, assumedly a nonpublic body (a nonprofit corporation) with a commitment to assist the Federation in carrying out its constitutional and legal duties in public education".
In our opinion, the Parish of Caddo has the power to engage in economic development, and to utilize the services of the Foundation in pursuing that endeavor, as long as the economic development activities of the Parish and the Foundation are conducted in accordance with the Constitution or laws of this state.
Care should be taken to insure the Foundation's commitment to act in a manner consistent with the duties and obligations of the Parish regarding public funds, as well as the Foundation's commitment to utilize the funds in accordance with the voter authorization as expressed in the proposed proposition. In this regard, the Parish Commission may wish to enter into a cooperative endeavor agreement with the Foundation.
The second issue presented must be examined in light of City of Port Allen v. Louisiana Municipal Risk Management Agency, Inc.,439 So.2d 399 (1983). In that decision, the Louisiana Supreme Court interpreted Art. VII, Sec. 14, and stated that Art. VII, Sec. 14(A) ". . . is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The Court went on to state that the constitutional authorization for cooperative endeavors, contained in Sec. 14(C) of Art. VII, does not provide for an exception to the prohibition contained in Sec. 14(A):
 "There is no indication that [Sec. 14(C)] is meant to be an exception to the rule of Sec. 14(A). . . Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a `public purpose'."
This office is unaware of any constitutional or statutory provisions which obligate a parish or parish governing authority to fund the maintenance, equipment or operation of an entity such as the Facility. Although the Facility's presence in Caddo Parish will no doubt benefit the Parish, the Facility is not a subdivision of the Parish, and the Parish of Caddo is under no obligation to fund biomedical research. There being no underlying legal obligation or authority for a transfer of these funds to the Facility, it is the opinion of this office that the Parish is constitutionally prohibited, under City of Port Allen, from doing so.
Please note that the tax revenues generated by the proposition could, according to the terms of the proposition, be utilized for purposes other than the Facility. In fact, Ms. Morgan's letter points out that the Foundation is currently pursuing other projects.
Please be advised that although Ms. Morgan has requested that our opinion address the broader purposes and projects of the Foundation, our opinion is strictly limited to the use of the funds for the purpose of maintaining, equipping and operating the Facility. The utilization of the tax revenues for any other purpose would have to be scrutinized on an individual basis in order to determine if those purposes are authorized by the constitution and laws of this state, as well as authorized by the terms of the proposition, as approved by the voters.
Trusting this adequately responds to your inquiry, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 221